**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RICHARD ANDERSON,          :
                           :   Civil Action No. 10-3933 (RBK)
           Petitioner,     :
                           :
      v.                   :   **OPINION**
                           :
PAUL SCHULTZ,              :
                           :
           Respondent.     :

**APPEARANCES:**

Petitioner pro se                Counsel for Respondent
Richard Anderson                 Paul A. Blaine
F.C.I. Fairton                   Assistant U.S. Attorney
P.O. Box 420                     Camden Federal Bldg. and U.S.
Fairton, NJ 08320                    Courthouse
                                 401 Market Street
                                 Camden, NJ 08101

**KUGLER**, District Judge

     Petitioner Richard Anderson, a prisoner currently confined

at the Federal Correctional Institution at Fairton, New Jersey,

has submitted a petition for writ of habeas corpus, pursuant to

28 U.S.C. § 2241,[1] challenging the results of a prison

------------------

     [1] United States Code Title 28, Section 2241, provides in
pertinent part:
          (a) Writs of habeas corpus may be granted by
          the ... district courts ... within their
          respective jurisdictions ...
          (c) The writ of habeas corpus shall not
          extend to a prisoner unless- ... (3) He is in
          custody in violation of the Constitution or
          laws or treaties of the United States ... .

disciplinary proceeding.  The sole respondent is warden Paul Schultz.

For the reasons set forth below, the Petition will be dismissed with prejudice for failure to exhaust administrative remedies or, in the alternative, denied on the merits.

## I.  BACKGROUND

Petitioner Richard Anderson was convicted in the United States District Court for the Northern District of New York, on one count of conspiracy to distribute and possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846.  By judgment entered on March 21, 2008, he was sentenced to serve a term of 77 months' imprisonment.  See United States v. Anderson, Criminal No. 06-0056 (N.D.N.Y.).  Petitioner's current projected release date is November 18, 2013.

The parties agree that on February 25, 2009, at 10:25 a.m., staff at F.C.I. Fairton conducted a routine search of Petitioner's cell, which he shared with prisoner Anthony Devonshire.  Staff member James Waterfield removed the vent above the sink in the cell and found a 9 and 5/8 inch shank in the duct.  The knife was made of plastic with a packing tape handle and a string lanyard.

An Incident Report was prepared and delivered to Petitioner at 3:55 p.m. the same day.  Petitioner was charged with a

violation of disciplinary code 104 (possession, manufacture, or introduction of a weapon).  Petitioner was then moved to administrative detention in the Special Housing Unit.  Petitioner advised the Unit Disciplinary Committee that he had no knowledge how the weapon got in the cell and that he had nothing to do with it.  After the U.S. Attorney declined to pursue criminal charges, the UDC referred the matter to a Discipline Hearing Officer.

On April 16, 2009, at the DHO hearing, Petitioner again denied any knowledge of the knife.  The DHO found that Petitioner had committed the prohibited act of possession of a weapon.

> The DHO finds that on February 25, 2009, at about 10:25 am, in cell 322 of BL Unit at FCI Fairton, you did commit the prohibited act of Possession of a Weapon, code 104.
>
> The specific evidence relied upon to support this finding was the written statement of the reporting staff member, J. Waterfield, who states on 2/25/09 at about 10:25 a.m., he found a home made weapon in the duct work above the sink in your cell.  It was 9 5/8" long made from plastic with packing tape on the handle and a string lanyard.  There was also a few feet of dental floss on the handle.  Additionally, the DHO relied upon as evidence the photographs of the weapon. You denied the weapon was yours.  The DHO explained to your during the hearing that inmates are accountable for contraband found in their cell and inmates have the responsibility of ensuring their areas are free of contraband.
>
> Therefore, having considered all relevant evidence, the DHO finds that the greater weight of the evidence supports the finding that you committed the prohibited act of Possession of a Weapon, code 104.

(DHO Report, ¶ V.)  As the sanction, the DHO disallowed 40 days of good conduct time.  The decision was delivered to Petitioner

on May 14, 2009, and Petitioner was advised of his right to appeal the decision within 20 calendar days under the Bureau of Prisons Administrative Remedy Procedure.[2]

Petitioner's appeal was received at the BOP Northeast Regional Office on June 10, 2009, 27 days after Petitioner had received notice of his right to appeal, and the appeal was rejected as untimely.  Petitioner made no effort to pursue any further administrative remedies.

Here, Petitioner contends that there was not sufficient evidence to sustain the finding that he had constructive possession of the knife.  Petitioner also alleges that the disciplinary action was a violation of his equal protection rights, because the prisoners in the opposing cell, who he contends could have put the knife in the duct, were not charged with a violation.  He seeks, as relief, expungement of the incident report, restoration of his good-time credits, and extra credit against his sentence for every day he spent in the Special Housing Unit on administrative and/or disciplinary segregation.

Respondent has answered, arguing that Petitioner failed to exhaust his administrative remedies and that, in the alternative, Petitioner's challenge to the discipline decision is meritless. The time for Petitioner to file a reply has lapsed, without any

---

[2] Petitioner's cellmate was charged and found guilty of the same violation and received the same sanction of loss of 40 days good conduct time.

4

further supporting brief, and this matter is now ready for
decision.

## II.  LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading
requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994).  A
petition must "specify all the grounds for relief" and must set
forth "facts supporting each of the grounds thus specified." See
Rule 2(c) of the Rules Governing § 2254 Cases in the U.S.
District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made
applicable to § 2241 petitions through Rule 1(b) of the Habeas
Rules.

Nevertheless, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers.  Estelle
v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.
519, 520 (1972).  A pro se habeas petition and any supporting
submissions must be construed liberally and with a measure of
tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998);
Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);
United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),
cert. denied, 399 U.S. 912 (1970).

## III.  ANALYSIS

A.  Jurisdiction

A habeas corpus petition is the proper mechanism for a
prisoner to challenge the "fact or duration" of his confinement,

Preiser v. Rodriquez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997).  See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005).

B.    Exhaustion of Administrative Remedies

Respondent contends that the Petition should be dismissed for failure to exhaust administrative remedies.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a
> factual record and apply its expertise facilitates
> judicial review; (2) permitting agencies to grant the
> relief requested conserves judicial resources; and
> (3) providing agencies the opportunity to correct their
> own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,

6

exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In general, the BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."[3]  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within

_____

[3] "This rule does not require the inmate to file under the Administrative Remedy Program before filing under statutorily-mandated procedures for tort claims (see 28 CFR 543, subpart C), Inmate Accident Compensation claims(28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D),[ or other statutorily-mandated administrative procedures]." 67 F.R. 50804-01, 2002 WL 1789480 (August 6, 2002).

20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.[4] Id. Appeal to the General Counsel is the final administrative appeal. Id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Disciplinary Hearing Officer (DHO) appeals omit the local review levels and are submitted directly to the Regional Director within 20 days. See 28 C.F.R. §§ 542.14(d)(2), 542.15. Therefore, DHO appeals involve fewer levels of review in order to be considered "exhausted."

Here, Petitioner did not timely appeal the DHO decision. He has suggested no reason why he could not have appealed timely. Accordingly, the Petition is subject to dismissal for failure to exhaust administrative remedies. In addition, the Petition is meritless.

---

[4] Response times for each level of review are set forth in 28 C.F.R. § 542.18.

C.   <u>Petitioner's Claims</u>

Petitioner asserts that there was not sufficient evidence to find him in constructive possession of the knife and that he was charged in violation of his equal protection rights because other prisoners who could have had access to the duct, and placed the knife there, were not charged with a disciplinary violation.

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>Wilwording v. Swenson</u>, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ...  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  <u>Wolff</u>, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law.  <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[5] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when

---

[5] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct.  See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[6] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action.  <u>Wolff</u>, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings.  <u>Id.</u> at 569-70.  Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member.  <u>Id.</u> at 570.

In addition, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. <u>Superintendent, Massachusetts Correctional Institution at Wolpole</u>

---

[6] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing.  To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing.  <u>See</u> <u>Ponte v. Real</u>, 471 U.S. 491 (1985).  "{P}rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals.  ...  [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners."  <u>Grandison v. Cuyler</u>, 774 F.2d 598, 604 (3d Cir. 1985).

<u>v. Hill</u>, 472 U.S. 445, 454-56 (1985).[7]  It is this aspect of the standard that is at the crux of Petitioner's challenge.

Finally, the "harmless error" rule applies to federal court review of prison disciplinary actions.  See <u>Elkin v. Fauver</u>, 969 F.2d 48 (3d Cir.), <u>cert. denied</u>, 506 U.S. 977 (1992); <u>Powell v. Coughlin</u>, 953 F.2d 744 (2d Cir. 1991); <u>Pressley v. Blaine</u>, 544 F.Supp.2d 446, 457 (W.D. Pa. 2008).

Bureau of Prisons regulations require inmates to keep their cells free of contraband.  See 28 C.F.R. § 541.12; Bureau of Prisons Program Statement 5270.07 (Inmate Discipline), Chapter 3. Courts consistently have upheld the rule that inmates can be held to be in "constructive possession" of contraband found in their cells.  See, <u>e.g.</u>, <u>White v. Kane</u>, 860 F.Supp. 1075, 1079 (E.D. Pa. 1994), <u>aff'd</u>, 52 F.3d 319 (3d Cir. 1995).  See also <u>Santiago v. Nash</u>, 224 Fed. Appx. 175, 177 (3d Cir. 2007) ("some evidence" rule may be satisfied by application of the constructive possession doctrine where only a small number of inmates are potentially guilty of the offense charged); <u>Reynolds v. Williamson</u>, 197 Fed.Appx. 196, 199 (3d Cir. 2006) (applying doctrine of constructive possession where only two people were

---

[7] The due process requirements of <u>Wolff</u>, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq.  See, <u>e.g.</u>, 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

assigned to cell in which sharpened rod was found inside sink drain); Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir. 1992) (applying doctrine of constructive possession where weapons found in air vent of cell shared by four inmates; 25% probability that sanctioned prisoner was responsible for weapon is sufficient to satisfy the "some evidence" standard); Donahue v. Grondolsky, 2009 WL 3754045, *5-6 (D.N.J. Nov. 2, 2009), aff'd, 2010 WL 3529301 (3d Cir. Sept. 13, 2010) (held, where prisoner argued he was "set up," constructive possession doctrine is not unreliable where inmate shares cell with three other inmates and where cell had been searched earlier the same day).

Here, even crediting Petitioner's allegation that, in addition to his cellmate, two other inmates had access to the vent where the knife was found,[8] there was still "some evidence" that Petitioner was responsible for the knife.  Where a maximum of four inmates could have had access to the vent, it is permissible to found Petitioner in constructive possession of the knife found in his cell.

Finally, the allegation that discipline of Petitioner violated his right to equal protection is completely unsubstantiated.  Petitioner has provided no evidence that other

---

[8] The Court notes that Petitioner has provided this Court with no evidence that any other inmates had access to the vent.

prisoners were similarly situated to himself, or that there was any impropriety in the decision to discipline Petitioner.

IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be dismissed with prejudice for failure to exhaust administrative remedies or, in the alternative, denied on the merits.   An appropriate order follows.


                                        s/Robert B. Kugler
                                        Robert B. Kugler
                                        United States District Judge

Dated: May 12, 2011

14